## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

### OCTOBER TERM, 1909.

---

*(Continued from Volume 141)*

---

GEORGE C. STOUT, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

**Springfield Court of Appeals, February 7, 1910.**

1. **RAILROADS: Killing Animals at Crossing: Defective Cattle Guards.** If an animal came down a highway and started to go through a defective cattle guard, but saw a train approaching and turned and was killed before he could get off the track, the railroad company would not be liable; but, if he passed over the defective cattle guard and on to the right of way and, on seeing an approaching train, started to get away by repassing over the guard and was killed, the railroad company would be liable whether the animal was struck right on the guard, or just after it had passed over it to the highway.

2. ————: **Duty to Fence, in Incorporated Towns: Single and Double Damages.** Under Revised Statutes 1899, section 1105, railroad companies are not liable for double damages for failure to fence, in incorporated towns; but they are liable for single damages, under section 2867, arising on account of a failure to fence at a place which might have been fenced without inconvenience to the operation of the road or the public access thereto.

142 App.—1        (1)

3. ——: ——: Actions: No Recovery for Single When Suit is for Double Damages. An action for double damages arising out of a failure of a railroad company to fence will not lie where the evidence shows that the premises were within the corporate limits of a town; and, where the suit was brought for double damages, no recovery can be had for single damages.

4. MUNICIPAL CORPORATIONS: Incorporation Cannot be Collaterally Attacked. The validity of a municipal corporation can be determined only in a direct proceeding, and is not subject to collateral attack.

5. ——: Validity of Corporation Which Includes Farm Land. Even though a town, as organized by the county court, did include a large tract of land which should not have been included because it was used for agricultural purposes only, this was not sufficient to invalidate the incorporation.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

REVERSED AS TO ONE COUNT; AFFIRMED AS TO OTHER COUNTS.

*James F. Green* for appellant.

(1) The undisputed evidence is that plaintiff's bull was killed on a public road crossing and within the corporate limits of the town of Harviell. There could be no recovery, therefore, without proof of negligence on part of the defendant. R. S. 1899, sec. 2867; Wallace v. Railroad, 74 Mo. 597; Webster v. Railroad, 57 Mo. App. 451; Lloyd v. Railroad, 49 Mo. 199; Grant v. Railroad, 56 Mo. App. 65; Morris v. Railroad, 58 Mo. 78; Pearson v. Railroad, 33 Mo. App. 543; Redmond v. Railroad, 104 Mo. App. 651. (2) Plaintiff was not entitled to recover double damages for the destruction of his crops, because the railroad "Y" within which the field was located was wholly within the corporate limits of the town of Neeleyville and the railway company was not required to fence the railroad. Vanderworker v. Railroad, 48 Mo. App. 654; Hurd v. Chappell, 91 Mo. App. 317; Meyer v. Railroad, 35 Mo. 352; Downey v. Railroad, 94 Mo. App. 137.

*Abington & Phillips* for respondent.

Where an animal is killed at a point on a railroad in an incorporated city, town or village, and at a point where the road was not required to be fenced, but if the road could have been fenced and was not, the company is liable for the value of the animal killed without proof of negligence. Wymore v. Railway, 79 Mo. 247; Rhea v. Railway, 84 Mo. 384; Vanderworker v. Railway, 51 Mo. App. 166; Meadows v. Railroad, 82 Mo. App. 83; Ells v. Railroad, 48 Mo. 231; Eaton v. Railway, 119 Mo. App. 640; Acord v. Railway, 113 Mo. App. 84; Radcliff v. Railroad, 90 Mo. 127.

GRAY, J.—In the April term, 1909, of the circuit court of Butler county, three suits were pending in which the respondent was plaintiff, and the appellant defendant. On motion of the defendant, the suits were consolidated, and the defendant filed a general answer, consisting of a general denial. The case was tried on the 7th day of May, 1909, before a jury, resulting in a verdict in favor of the plaintiff on all the counts in his different petitions.

One of the suits is in three counts, to recover damages for hogs killed by the defendant. In this suit, the plaintiff alleged in the first count that at a point on defendant's road, in Neeley township, Butler county, one of his hogs came upon the track of the defendant where the same passes through enclosed fields, and where there was no public crossing or highway, and at a point where, under the laws of Missouri, the defendant is required to maintain fences, and that said hog came upon said track at said point by reason of the fact that the defendant had failed to maintain the fence required by law, and on account thereof, was run over and killed by a train operated by the defendant, and that said hog was of the value of $7.80, and prayed judgment for double damages.

The second count is similar to the first, and alleges the value of the hog to be $9, and prays for double damages and costs.

The third count alleges the value of the hog to be $7.80, and is exactly like the first count, except that it alleges the hog was killed on the 9th day of December, 1908, while the first count fixed the date as October 11, 1908.

The testimony shows that the hogs belonged to the plaintiff, and that they were killed by the defendant's trains; that they were killed at a point where, under the law, the defendant is required to maintain a fence, and that the fences were badly out of repair. The jury found a verdict for the plaintiff on each count, in the sum of $7. The court rendered judgment for double damages, to-wit: $14 on each count.

The appellant has not called our attention to any errors of the trial court in this part of the consolidated case, and in fact, none exist.

Another one of the suits is for damages growing out of the killing of a bull by the defendant. The testimony shows that the railroad of the defendant passes through the town of Harviell, and at the southern limits of this town is a public highway running east and west, and that this highway is crossed by the railroad at this point. The ownership of the animal and the fact that he was killed by one of the trains of the defendant is not questioned. The action was not brought for double damages, but single damages, and the petition alleges that the place where the animal entered upon the highway, is a place where said right of way might have been enclosed by cattle guards and lawful fences, but that the defendant suffered the fence at said point to remain down and out of repair, at the time and place, and where said animal got upon its railroad and was killed.

The station is north of the public highway, and between the station and the public highway, for a part

of the way at least, and next to the highway, the railroad company had attempted to fence its right of way. Wing fences had been erected leading from the track to the right of way, and a cattle guard had been put in at the point where the railroad intersects the north side of the highway. There were no streets, switches or anything to prevent the fencing of the right of way north of the highway, and the company had erected fences and put in cattle guards, and thereby showing that a fence could be maintained at the place in question.

There were three witnesses testified concerning the killing of the animal. Albert Fray, a farmer, examined on the part of the plaintiff, testified that he saw the train hit the animal and knock him off the track; that he was standing waiting for the train to pass, and that the bull, at the time he was struck, was just at the edge of the north cattle guard, and that at the time the animal was struck he had got over the cattle guard from the north and was on the public highway. The witness also testified that the bull had been inside the highway and he was not really certain whether he had passed entirely over the cattle guard into the highway before he was struck.

From all the testimony of this witness, it is left in doubt whether the animal had crossed from the right of way, north of the highway, out on to the highway before he was struck.

George Pigg, another witness for the plaintiff, said he was plowing in a field near the railroad and was standing in the shade at the time the animal was killed; that the bull was inside the right of way, and as the train was coming, he was trying to get across the cattle guard out into the public road, but before he got off the track, he was struck and killed. And from the testimony of this witness, it is left uncertain whether the bull was struck on the cattle guard or just after he passed over the same into the public highway. Mr.

Pigg, however, did testify that he had seen the animal prior to the time the train came, and that he was northeast from the cattle guard inside of the right of way.

The defendant called one witness, who testified that he saw the train strike the animal. This witness further testified that he was about one hundred and fifty yards from the railroad, sitting near a pile of ties; that he heard the train whistle and he knew there was something wrong; that he got upon the pile of ties and saw the bull coming down the road from the east going west, and that he started in on the right of way, and when the train came he turned, but the train struck him before he got off the track.

The preponderance of the evidence, however, was to the effect that the bull did get over the cattle guard north of the highway, and was on the defendant's right of way; that when the train approached, he attempted to get off the right of way into the public highway, and was caught as he was getting over the cattle guard or just as he had reached the highway.

There was abundant testimony to prove that the cattle guard and fence on the north side of the highway, were in bad condition. It is claimed by the appellant that inasmuch as the bull was killed on the public highway, that it is not liable. If the testimony established the fact that the animal was coming down the highway and started to go in through the defective cattle guard, but saw the train approaching and turned and was killed before he could get off the track, the defendant would not be liable. On the other hand, if the animal did come down the highway and passed over a defective cattle guard of the defendant, and on to the right of way, and when the train approached, started to get away by passing out over the cattle guard, and was killed, then we do not believe it would make any difference whether he was killed right on the cattle guard or just as he had passed over it on to the highway in his effort to escape.

If the action had been brought under the statute for double damages, then inasmuch as the evidence shows that the place where the animal entered the track and was killed, was within the limits of an incorporated town, the action could not be maintained, as railroads are not required to fence their tracks within the. limits of incorporated towns and cities, that is, they are not liable for double damages for failure to do so. [Sec. 1105, Revised Statutes 1899; Edwards v. Railroad, 66 Mo. 567; Rhea v. Railroad, 84 Mo. 345; Acord v. Railroad, 113 Mo. App. 84, 87 S. W. 537; Smith v. Railroad, 111 Mo. App. 410, 85 S. W. 972.] But this action is not for double damages. The plaintiff claims that the animal went upon the track at a point where the company could have maintained a fence. The rule is now well established that if the animal was killed at a place which might have been fenced without inconvenience to the operation of the road or the public access thereto, a recovery for single damages may be had under the other section of our statute (2867), and on the ground that the company might have fenced and failed to do so. [Acord v. Railroad, 113 Mo. App. 84, 87 S. W. 537; Rhea v. Railroad, 84 Mo. 346.]

As the statute expressly provides that the company shall not be liable for stock killed on a highway, because it is not required or permitted to fence its road at such points, the appellant insists that if the bull was killed on the highway, the plaintiff cannot recover. Wherever there is an intersection of a railroad with a public highway, a part of the right of way is also a part of the highway, and if an animal enters upon the right of way which forms a part of the public highway and is killed, no liability attaches. On the other hand, if an animal enters upon the right of way at such a point and passes therefrom over a defective cattle guard and onto the right of way at a point where the company is required to fence or where it might fence, and the animal, upon

the approach of the train tries to escape and is caught on the right of way, either at a point where the company is required to fence, or on the highway, no reason can be assigned why the plaintiff should not recover. In other words, it is a well-known fact that if an animal passes from the highway over a defective cattle guard and on to the right of way where the company is required to fence, and is scared by a train approaching the highway, that it will attempt to escape over the cattle guard where it had entered the right of way, and whether the train strikes it just before it has reached the cattle guard in its effort to escape, or just as it has passed over it on to the highway, can make no difference.

The verdict upon this branch of the consolidated case is also for the right party and should not be disturbed.

The third cause of action is also in two counts. The first count alleges that the defendant, at the time complained of, was operating a railroad through the forty acres of land in Butler county, Missouri; that a part of the same lies west of defendant's railroad, and during the year of 1908, plaintiff was occupying and cultivating the same; that all of said land is contiguous and adjoining, and is enclosed and cultivated lands; that from the 1st day of April, 1908, until the 1st day of June, 1908, hogs and other animals strayed and escaped from its said railroad and right of way at the place where the defendant's railroad runs along and joins said cultivated fields, and destroyed a large quantity of the plaintiff's oats, of the value of $150; that the destruction of said oats was occasioned by the failure of the defendant to erect and maintain good and sufficient cattle guards and lawful fences along the sides of said railroad, and at the point of said road running along and adjoining plaintiff's cultivated fields, as aforesaid. The prayer is for double damages.

The second count alleged the same facts as stated

in the first count, except plaintiff asked $300 as double damages for the destruction of a crop of peas which he sowed on said premises in June, 1908. The jury returned a verdict in favor of the plaintiff on each count in the sum of $75, and these amounts were doubled by the court, and judgment rendered accordingly.

The evidence on the part of plaintiff shows that the five-acre tract upon which the crops were sown, was first put in oats, and on account of defective cattle guards on the railroad of the defendant, hogs and other animals entered upon the five-acre tract and destroyed the oats, and that the crop would have made about one and one-half tons to the acre, and was worth $15 per ton.

It was also shown that after the oat crop would have matured, it would have been removed from the premises in time to have permitted the plaintiff to raise a crop of peas upon the premises, also during that year. The plaintiff did sow a crop of peas and the same was destroyed by hogs and other animals passing over the said defective cattle guards of the defendant, and that the value of this crop was the same as the oat crop.

The defendant maintains that the premises are within the corporate limits of the town of Neeleyville, and therefore, defendant is not liable for double damages for the destruction of the crops. The main line of the defendant railroad passes through the platted part of Neeleyville from the north to the south. On the west side of the town, and running parallel with the railroad, is a public highway. From a point north of Neeleyville a track of the defendant extends from the main line southwest, in a circle to the west, and crosses the public highway at the west side of the city. This track, we will call No. 1. A branch road from Neeleyville to Doniphan extends from a point south of Neeleyville in a circle to the northwest, and intersects track No. 1 at a point a short distance east of said public highway, and all forming a "Y," and within this

"Y" is situated the five acres of land upon which it is claimed the crops were destroyed.

The appellant introduced in evidence the record of the county court of Butler county, of date April 30, 1883, which purports to be a record incorporating the town of Neeleyville. The respondent objected to this order for the reason that it was not the proper way to incorporate a town, and for the further reason that if the town was organized, as stated in the order, that it had not maintained its organization, but had abandoned the same.

The objections made in this court by the respondent to the order, is that it included within its limits, territory used solely for agricultural purposes. This objection was not made in the court below, and comes for the first time here. The town as organized by the said order of the county court, did include a large tract of land that should not have been included, as it was used for farming and agricultural purposes, and was without blocks or streets. But the incorporation of the village was not invalidated for this reason. [Burnes ex rel. v. City of Edgerton, 143 Mo. 563, 45 S. W. 293.] And even if including such territory in the organization, invalidated the corporation proceedings, the question could only be determined in a direct proceeding, as the corporation of the village is not subject to collateral attack. [Kayser v. Trustees, 16 Mo. 88; State ex inf. v. Fleming, 147 Mo. l. c. 11, 44 S. W. 758; Black v. Early, 208 Mo. l. c. 305, 106 S. W. 1014; State ex rel. Chandler v. Huff, 105 Mo. App. 354, 79 S. W. 1010.]

As stated in another branch of this opinion, the defendant is not required to fence its tracks or put in cattle guards within the limits of an incorporated town or village, and cannot be held liable for double damages for failing so to do, and as the suit was brought for double damages, there can be no recovery for single damages. [Rhea v. Railroad, 84 Mo. 345; Grant v. Rail-

road, 56 Mo. App. 65; Sullivan v. Railroad, 72 Mo. 195.]

The judgment of the trial court on all the counts relating to the killing of stock is affirmed, and the judgment of $300 for destruction of crops is reversed. All concur.