SANDY P. HUFF, Respondent, v. MISSOURI
PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals.    October 7, 1912.**

1. **NEGLIGENCE: Collision: Noise of Approaching Train.** Plain-
tiff, driving a horse hitched to a buggy, stopped near the cor-
ner of a mill facing east, to transact some business. The
horse became frightened at the loud and unusual noise of an
approaching fast mail train running at high speed, became un-
manageable, and collided with the rear coach of the said train.
Before the collision, the plaintiff was thrown out and severely
injured. The horse was killed, and the buggy wrecked. *Held*,
that the noise that caused the plaintiff's horse to run away, and
thereby injure it, was the result alone of the noise insepara-
ble from the speed of the train, therefore, the plaintiff could
not recover.

2. ———: **Rate of Speed: Recovery.** The rate of speed of a
railroad train does not, of itself, constitute negligence, but
actual negligence must be shown in order to authorize a re-
covery.

3. ———: **Unusual Noise: Testimony: Witnesses.** The testimony
of witnesses, that the train made a loud and unusual noise has
no probative force, because the noise of a train is commensu-
rate with its speed.

Appeal from Pettis Circuit Court.—*Hon. H. B.
Shain,* Judge.

REVERSED.

*C. D. Corum* for appellant.

*Chas. E. Yeater* for respondent.

BROADDUS, P. J.—This action is to recover
damages plaintiff sustained on account of the alleged
negligence of the defendant.

The facts are as follows: On the 26th day of Oc-
tober, 1910, the plaintiff, who lived near Lamonte,
Missouri, came in his buggy drawn by a gentle horse

into the town on business, and stopped at or near the east corner of a warehouse fronting east. A mill was situated just west of the warehouse where plaintiff had gone to get a sack of flour, and he was directed to go to the east front of the warehouse where it would be delivered to him. When he got around the east corner his horse became alarmed and ran east to Walunt street, a street located north and south, then turned southeast for a short distance, then almost east until near the east side of the street, where it turned south and ran into the rear coach of defendant's passenger train, which was going west at a rapid rate of speed. Before the collision, plaintiff was thrown out of the buggy and severely injured. The collision killed the horse, and wrecked the buggy. The plaintiff testified that he did not remember what occurred after he got around to the front of the warehouse.

The train in question was a fast mail train, and was running at a speed of fifty or sixty miles an hour.

The grounds of negligence alleged in the petition were four in number, the second of which, that the train was operated through the city of Lamonte in excess of the rate of speed of ten miles an hour, as provided by an ordinance, was withdrawn from the jury.

The first ground alleged for recovery is, that the train was run through the city at an unusual rate of speed, which caused a sudden loud roar and an unsual and extraordinary noise, terrifying to horses ordinarily safe in proximity to trains. The third: That the train was operated through the city without ringing the bell or sounding the whistle eighty rods from the crossing. The fourth: That the train was operated without giving such bell or whistle signals as would be sufficient to warn persons of the danger and give them the opportunity of getting to a place of safety.

The answer was a general denial and a plea of contributory negligence.

The evidence of plaintiff tended to show that the train made a loud and unusual noise; that the usual signal was given of the approach of the train at the usual distance from the station, and at the street crossing before reaching it, and it was shown that the bell was rung while the train was passing through the city.

Under the instructions of the court the finding and judgment were for the plaintiff, and the defendant appealed.

Many questions are raised and discussed by counsel, but the principal one is, whether, under the pleadings and evidence, plaintiff was entitled to recover. It is conceded that the train was running at a rapid rate of speed, but, as a matter of law, the rate of speed of a railroad train does not, of itself, constitute negligence. [Wallace v. Railroad, 74 Mo. 594; Maher v. Railroad, 64 Mo. 267.] According to these authorities, actual negligence must be shown in order to authorize a recovery.

The plaintiff's action is not predicated on the mere rate of speed at which the train in question was running, but, upon the other fact, that it was making a loud and unusual noise, which had the effect of alarming plaintiff's horse, causing him to run away, resulting in injury to the plaintiff, the killing of the horse and the wrecking of the buggy.

The witnesses did not undertake to say what caused the train to make an unusual noise. There was nothing to show that its equipment, consisting of an engine, baggage, mail and passenger cars, was other than was in ordinary use by defendant for the service in which it was then engaged. There was no proof that the engineer permitted the escape of an excessive amount of steam, or that the sounding of the whistle and the ringing of the bell were unusually or unnecessarily loud.

The theory of plaintiff, as shown by an instruction given at his instance by the court, was, that if defendant ran its train at an unusual and extraordinary rate of speed "which caused a sudden loud roar and an unusual and extraordinary noise, terrifying to horses ordinarily safe when close to trains operated in the usual and ordinary manner and speed, and if they further believe that plaintiff's horse was as gentle as the ordinary horse and was accustomed to trains operated in the usual and ordinary manner and speed, and if they also believe plaintiff's horse suddenly became terrified at such sudden loud and unusual and extraordinary noise," and ran away, etc., the verdict should be for the plaintiff. Analyzed, plaintiff's theory is nothing more nor less than the rapid rate of speed of the train, which caused the loud and extraordinary noise.

The testimony of witnesses, that the train made a loud and unusual noise, has no probative force, as it must be admitted, everything else being equal, that the noise of a train commensurate with its speed. And it may perhaps have been true, as stated by witnesses, that the train made more noise than it usually did, but this is entitled to no weight whatever for the same reason.

This is not like instances where the engineer of a train sees a person in peril on or near the track, and is required to stop or slow down his train to avoid injuring him. The plaintiff was not on or near the track in sight, and the engineer could not know that the noise made by the speed of the train would alarm his horse and cause it to run away. After all, the plaintiff's right to recover rests upon the fact that the noise that caused his horse to run away, and thereby injured it, was the result alone of the noise inseparable from the speed of the train.

In view of the foregoing conclusion, it is unnecessary to comment upon other questions raised in the

briefs and arguments of the respective sides to the controversy. It follows, therefore, that the judgment stands reversed. All concur.